Aultman & Taylor Machinery Company, Appellee, v. Warren Springer, Appellant.

## Gen. No. 14,977.

WARRANTIES—*what not of capacity.* Held, . that the particular language in question in this case, was not a guarantee of the capacity of the boilers involved therein.

Assumpsit. Appeal from the Circuit Court of Cook county; the Hon. OSCAR E. HEARD, Judge, presiding. Heard in this court at the October term, 1908. Affirmed. Opinion filed March 17, 1910.

STEADMAN & SOELKE, for appellant.

THOMAS E. D. BRADLEY, for appellee.

MR. JUSTICE FREEMAN delivered the opinion of the Court.

Appellee recovered judgment against defendant for $1123.19 balance claimed to be due for two boilers furnished and erected by plaintiff in October, 1902, for defendant under a written contract and specifications. The contract price was stated in plaintiff's proposition to furnish the boilers, accepted in writing by the defendant, to be $3375. The boilers were furnished and erected it is said in October, 1902, at or about which time defendant paid half of the contract price. In February, 1903, he paid $500 more and in March following made another payment of $250, leaving due the balance of $1123.19 for which plaintiff has recovered the judgment from which this appeal is prosecuted.

There is evidence tending to show in April, 1903, a statement of the account showing a balance of $1123.19, the amount now in controversy, was presented to the defendant by the witness Brown and that the defendant then promised to pay that balance in the early part of the following month, viz: May, 1903; also that on or about the 10th of May, 1903, a statement of the same account, with interest thereon computed to that

date was presented to defendant by the witness Merrill, and that defendant then again acquiesced in the correctness of the statement and promised to pay the amount within a few days. The testimony of the witnesses who presented these statements to the defendant, to the effect that the defendant's promise to pay the balance shown by them to be due, and that no complaint of any kind was made as to the condition of the boilers nor any suggestion that the warranty of the plaintiff with reference to them was not fully satisfied, is unqualified. Apparently the defendant does not deny that he so acknowledged the correctness of the statements to one of these witnesses at least and promised to pay the balance thereby shown to be due. He testifies, however, that he thinks he told the witness Merrill the latter part of April or May.that the boilers were not up to the warranty, that he would not pay any more money until he "found out for certain by some expert who knew about the water tube boilers, that we certainly could not keep up steam with them," and that he would not pay any more until he found out to his satisfaction; that this was after he had made the payments credited to him. It appears from the evidence that the boilers were put in during October, 1902.

The declaration in this suit was filed August 7, 1903. In 1904 the plaintiff sold the premises and "sold the boilers with the building." August 10, 1903, defendant pleaded the general issue to the plaintiff's declaration, and nearly two years thereafter filed a plea of set-off, claiming a breach of the alleged guaranty "that the boilers would be of sufficient capacity to produce steam sufficient to operate the machinery of the defendant * * * at less cost to the defendant for fuel than the boilers with which the defendant was then supplying steam for the operation of the plant." There was another count to this plea alleging a guaranty of capacity of the boilers to supply steam to operate the machinery of the defendant's plant, and

that the boilers were not of sufficient capacity. Three years later, April 30, 1906, additional pleas of set-off were filed.

The issues were submitted to the court, a jury having been waived. Upon the trial the plaintiff rested after introducing evidence as above stated, tending to show the promise of the defendant to pay the amount claimed to be due. Thereupon the defendant to sustain his pleas of set-off introduced the evidence upon which he relies, setting up a breach of the alleged warranty as to the capacity of the boilers. The warranty is as follows: "We will guarantee that these boilers can be worked constantly up to 300 H. P. each without the slightest injury to any of their parts, and that every detail of the boiler shall meet with the approval of the Hartford Steam Boiler Inspection and Insurance Company." The defendant's evidence consisted first of the testimony of two witnesses to the effect that there was trouble in the operation of the boilers owing to an alleged scarcity of steam space, and that steam enough could not be produced by the boilers to run a 250 horse power Corliss engine; and second, of the testimony of two witnesses who testified as experts. The first of these had not seen the boilers but said that in his opinion if they were such as were described to him they could not generate 300 horse power, that their maximum capacity would be 125 or 130 horse power. The second of these experts gave testimony to the same effect. In reply plaintiff produced evidence tending to show that the boilers were left in bad condition when in December, 1904, they came under the control and observation of the witness, that the insides were corroded, dirty and filled with scale, and that they produced 376 horse power for a year afterward, furnishing steam to three establishments including the 350 horse power Corliss engine referred to. Another witness gave testimony to the effect that boilers of that construction would produce not only 200 horse power each, but would go up to 400

horse power each without trouble, and still another testified that the boilers in controversy would produce 700 horse power under every day conditions. There was other evidence having some bearing upon the issues raised, which it is not necessary to detail. The court found the plaintiff entitled to recover the amount of the account stated, but refused to allow interest, and gave judgment accordingly. A request that the court find "that said boilers were guaranteed by said plaintiff to be capable of being worked constantly up to 300 horse power each" was refused.

It is urged in behalf of defendant that there are but two questions of fact and one of law material to the issues. The first of these alleged questions of fact is: What was the guarantee of the plaintiff? The phraseology of this alleged guaranty is above quoted. Defendant's counsel discuss at length the evidence which it is claimed tends to substantiate the contention that the boilers "could not be worked up to more than a maximum of 100 horse power each." We cannot with propriety follow them in this discussion, nor is it necessary to do so. There is no dispute as to the language of the alleged guarantee. The question is as to its meaning and construction. Defendant's claim is that it is a guaranty of capacity of 300 horse power for each boiler. It appears, however, from the letter containing the alleged guaranty and from the specifications enclosed with that letter that the boilers the plaintiff sold and the defendant purchased were "two 200 H. P. Cahall Horizontal Cross Drum Boilers." They were not 300 horse power boilers at all. It would be singular if when plaintiff was selling and charging for 200 horse power boilers it should unnecessarily and intentionally guarantee them a capacity of 300 horse power. Such a construction could only be warranted in case the language of the alleged guaranty clearly showed such intention. The alleged guaranty asserts that the boilers "*can* be worked constantly up to 300 horse power each," and there is

evidence tending to show that with proper quality of fuel this could be done.   But this is not the whole. That statement is modified by what follows, namely, that the boilers can be so worked "without the slightest injury to any of their parts."   This is, we think, a guaranty of the quality of the boilers, not of their capacity.   We are of opinion the court's ruling to the effect that the phraseology in question was not a guaranty of the capacity of the boilers is correct.

In view of this conclusion it is immaterial whether such alleged guaranty of capacity was kept and performed or not.   There is evidence upon which the court might properly find the boilers could be so worked, and what is more to the point, there is evidence also tending to show that the capacity of the boilers was adequate to the demands of defendant's plant.

For the reasons indicated the judgment of the Circuit Court will be affirmed.

*Affirmed.*